GENE ROSEN'S LAW FIRM
A PROFESSIONAL CORPORATION
200 Garden City Plaza, Suite 405
Garden City, New York 11530
Tel (212) 529-3600 Ext. 101
Fax (347) 578-8793
Gene@GeneRosen.com
Gene W. Rosen, Esq.
New Jersey Attorney ID: 004372010
Attorney for Plaintiffs

LAW OFFICES OF MICHAEL B. WOLK, PC
31 West 34th Street, Suite 7040
New York, New York 10001
Tel (917) 238-0576
michael.wolk@wolkgroup.com
Michael B. Wolk, Esq.
Proposed Pro Hac Vice Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
------------------------------------------------------------------------x
JG FUNDING CORP.; LENOX HUDSON LLC; LENOX
TEMPLE LLC; LENOX LIBERTY LLC; LENOX
BEACHWAY LLC; TEANECK PLAZA VENTURES LLC;
and HACKENSACK NORSE LLC;

                           Plaintiffs,           **VERIFIED**

    -against-                          **COMPLAINT**

SETH LEVINE; UNITED STATES OF AMERICA; STATE
OF NEW JERSEY; COUNTY OF BERGEN IN THE STATE
OF NEW JERSEY; COUNTY OF MONMOUTH IN THE
STATE OF NEW JERSEY; and

U.S. BANK NATIONAL ASSOCIATION, as trustee for the
registered holders of Wells Fargo Commercial Mortgage
Securities, Inc., Multifamily Mortgage Pass-Through
Certificates, Series 2018-SB51;
U.S. BANK NATIONAL ASSOCIATION, as trustee for the
registered holders of Wells Fargo Commercial Mortgage
Securities, Inc., Multifamily Mortgage Pass-Through
Certificates, Series 2018-SB57;
CITIBANK, N.A., as trustee for the registered holders of Wells
Fargo Commercial Mortgage Securities, Inc., Multifamily
Mortgage Pass-Through Certificates, Series 2018-SB 48;
AFFINITY FEDERAL CREDIT UNION; PARK NATIONAL

1

CAPITAL FUNDING LLC; JLS EQUITIES LLC; HUTTON
VENTURES LLC; ASCEND REAL ESTATE PARTNERS II
LLC; HERBERT TEPFER; LAW OFFICES OF DAVID
FLEISCHMANN, PC; LAW OFFICES OF CHAIM C.
ZLOTOWITZ, ESQ., PLLC; JUDAH A. ZELMANOVITZ;
and NEIL FINK,

                                      Defendants.
--------------------------------------------------------------------------------x

Plaintiffs, by and through their undersigned counsel, respectfully submit this
Verified Complaint in support of the relief requested in the causes of action herein and, in
connection therewith, Plaintiffs respectfully allege as follows:

## THE PARTIES, JURISDICTION AND VENUE

### A. Jurisdiction Summary

1.      As detailed below, this action is in the nature of interpleader with respect to real

property or personal property, located in the State of New Jersey, on which the United

States has or claims a lien (or on which the United States has or claims another type of

legal interest or equitable interest).  Therefore, pursuant to 28 U.S.C. 2410(a)(5) and/or

28 U.S.C. 1331, the Court has subject matter jurisdiction over this action.

2.      As detailed below, this action also seeks to quiet title to real property or personal

property, located in the State of New Jersey, on which the United States has or claims a

lien (or on which the United States has or claims another type of legal interest or

equitable interest).  Therefore, pursuant to 28 U.S.C. 2410(a)(1) and/or 28 U.S.C. 1331,

the Court has subject matter jurisdiction over this action.

3.      As detailed below, even if the United States does not have or claim a lien on any

property that is the subject of this action (or does not have or claim another type of legal

interest or equitable interest in such property), the Court would also have subject matter

jurisdiction over this action, pursuant to the "minimal diversity" provision for a statutory

interpleader case under 28 U.S.C. 1335, because at least two of the parties, who have or

claim a right to and/or lien on and/or interest in the property that is the subject of this action, are citizens of different states.

4.     To the extent there may be a cause of action in this Verified Complaint, if any, that the Court may find to be outside the scope of original federal jurisdiction under 28 U.S.C. 2410(a)(5) and/or 28 U.S.C. 2410(a)(1) and/or 28 U.S.C. 1335, then the Court has supplemental jurisdiction, pursuant to 28 U.S.C. 1367, over any such cause of action because any such cause of action, as set forth herein, is sufficiently "related" to the causes of action over which this Court has original federal jurisdiction, such that they form part of "the same case or controversy" under Article III of the U.S. Constitution.

### B. The Plaintiffs

5.     Plaintiff JG Funding Corp. ("JG") is a New York corporation with a principal place of business located in the City and State of New York.

6.     In July 2019, pursuant to written transaction agreements ("Agreements"), JG paid a purchase price of $1.5 million to acquire, *inter alia*, a series of membership and ownership interests in six (6) New Jersey limited liability companies ("Property Entities") from Defendant Seth Levine ("Levine") - - and the Property Entities are the record owners of seven (7) income producing real estate properties in New Jersey ("Properties").[1]  The Agreements are annexed hereto as Exhibit A.

7.     By not later than early August 2019, contractual defaults took place under the Agreements involving a failure to comply with obligations to repurchase JG's membership and ownership interests in the Property Entities for a contractually-required

---

[1] The Agreements provide that, at the time of contracting, Levine held 100% of the membership and ownership interests in all six (6) Property Entities that, in turn, are the record owners of the seven (7) Properties - - except for minor percentages in two Properties that were held in the name of Levine's wife or children.

"Buyout Price."  The Agreements provide that, **after-default**, (a) JG has sole and exclusive management authority over the Property Entities and the Properties and, in particular, a sole and exclusive "Sale Trigger Right" authorizing JG to cause an immediate sale of the Properties, without the need for consent from Levine or anyone else, for the purpose of generating sale proceeds to satisfy the first mortgage liens on the Properties ("First Mortgage Liens"), with the amount of the sale proceeds in excess of the First Mortgage Liens ("Surplus Sale Proceeds") to pay for the amount owed to JG under the Agreements (the "JG Debt") and (b) JG has a post-default lien in the Properties and Surplus Sale Proceeds to secure payment of the JG Debt.

8.      The following six Property Entities (each of whom are a Plaintiff) are the record owners of (a) the following seven Properties and (b) the Surplus Sale Proceeds to be generated from a sale thereof - - as the property that is the subject of this action and against which Defendants have or claim a right to, lien on, or interest in the same:

| **Record Owner Plaintiff** | **Income Producing Real Estate Property** |
|---|---|
| (i) Plaintiff Lenox Hudson LLC ("Hudson") | 107-109 Hudson Street, Hackensack, NJ ("Hudson Property") |
| (ii) Plaintiff Lenox Temple LLC ("Temple") | 54-78 Temple Avenue, Hackensack, NJ ("Temple Property") |
| (iii) Plaintiff Lenox Liberty LLC ("Liberty") | 406-444 Liberty Avenue, Hackensack, NJ ("Liberty Property") |
| (iv) Plaintiff Lenox Beachway LLC ("Beachway") | 544-560 Broadway, Keansburg, NJ ("Beachway Property") |
| (v) Plaintiff Teaneck Plaza Ventures LLC ("Teaneck") | 1407 Palisade Avenue, Teaneck, NJ ("Teaneck Property") |
| (vi) Plaintiff Hackensack Norse LLC ("Norse") | 88 McKinley Street, Hackensack, NJ ("McKinley Property") -and- |

Norse                                170 South Park Street, Hackensack, NJ
                                     ("South Park Property")

**C. The Defendants**

9.      In late August 2019, the Federal Home Loan Mortgage Corporation ("FHLMC")

commenced an action in this Court against Levine (and some of the real estate holding

companies in which Levine is alleged to have an ownership interest), seeking to protect

and enforce FHLMC's rights as the holder of a first mortgage lien against two separate

real estate properties in New Jersey that are not the subject of this case.  See *Federal*

*Home Loan Mortgage Corporation v. Seth Levine, et al.*, United States District Court for

the District of New Jersey, Case No. 19-17421 ("FHLMC Action").  The FHLMC

complaint alleges that the FBI recently executed a search warrant on Levine's offices in

connection with a federal investigation of Levine (and an array of real estate companies

in which Levine is alleged to have an ownership interest).  See FHLMC Action, ECF No.

1 (complaint, pars. 57-58).  The FHLMC complaint also alleges that Levine and his real

estate companies are no longer actively conducting business and, thus, the real estate

properties associated with Levine and his real estate companies are not being managed

and have effectively been abandoned.  *Id.,* pars. 59, 60, 62-63.  The FHLMC complaint

also alleges that Levine's counsel has confirmed the accuracy of these allegations.

*Id.*, par. 64.  Pursuant to its complaint and other court filings, the FHLMC moved by

order to show cause **for the appointment of a Receiver** to manage and operate the

real estate properties that are the subject of the FHLMC Action, pending an adjudication

on the merits of FHLMC's causes of action therein.  *Id*.

10.     On September 4, 2019, JLS Equities LLC ("JLS"), a New York limited liability

company, commenced a second action in this Court against Levine (and some of the real

estate holding companies in which Levine is alleged to have an ownership interest), seeking to protect and enforce JLS's interests, as an alleged holder of a $1.1 million loan made to an entity called "River Funding LLC" that is collateralized by "River Funding LLC" allegedly having 100% ownership of all membership interests **in three (3) of the Properties that are also the subject of this action and governed by JG's Agreements**, to wit: (i) the Hudson Property in Hackensack, New Jersey; (ii) the Temple Property in Hackensack, New Jersey; and (c) the Teaneck Property in Teaneck, New Jersey [see paragraph 7 herein] (together, these three Properties shall be defined as the "Hudson-Temple-Teaneck Properties").  See *JLS Equities LLC v. River Funding LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures LLC, Seth Levine and Shira Levine*, United States District Court for the District of New Jersey, Case No. 19-civ-17615 ("JLS Action"), ECF No. 1 (complaint).  Pursuant to its complaint and other court filings, JLS **moved for the appointment of a Receiver to manage and operate the Hudson-Temple-Teaneck Properties** (which are three of the seven Properties that are the subject of this case), pending an adjudication on the merits of JLS's causes of action therein.  *Id*., ECF No. 3.

11.     JLS's complaint in the JLS Action does not allege that JLS has a lien against (a) the Hudson-Temple-Teaneck Properties or (b) any Surplus Sale Proceeds to be generated from a sale thereof.  *Id.*, ECF No. 1, par. 23 (but JLS does allege that JLS's transaction "relied upon the available equity in each property and the ability of the management of each entity to operate the properties and preserve the equity").

12.     Although a title and lien search of the Hudson-Temple-Teaneck Properties reveals that JG, through its recording-nominee and transaction-counsel Judah A. Zelmanovitz,

and Neil Fink, have a recorded interest involving the Hudson-Temple-Teaneck Properties, the JLS complaint in the JLS Action does not address the same.  A copy of JG's recorded interests, through its recording-nominee and transaction-counsel Judah A. Zelmanovitz and Neil Fink, in all seven (7) Properties that are the subject of this action, and not just for the Hudson-Temple-Teaneck Properties, are attached in Exhibits B-H.

13.     Similarly, although a title and lien search of the Hudson-Temple-Teaneck Properties reveals that Affinity Federal Credit Union has a recorded first mortgage lien against the Teaneck Property, the JLS complaint in the JLS Action does not address the same.  See also motion papers, filed on September 25, 2019, by Affinity Federal Credit Union seeking permission to intervene in the JLS Action to protect its recorded first mortgage lien against the Teaneck Property.  *Id.*, ECF No. 20.  Those intervention motion papers indicate that Affinity Federal Credit Union has recently commenced an action in state court to foreclose its first mortgage lien against the Teaneck Property.  *Id.*

14.     Additional intervention motions have also been filed in the JLS Action by (a) Hutton Ventures LLC, as an alleged holder of a subordinate mortgage lien, recorded August 15, 2019, against the Teaneck Property (as well as the McKinley Property and the South Park Property), see paragraph 7 herein, involving an alleged $2.2 million loan under which the sum of $1,691,112.50 is allegedly due as of August 31, 2019 [*Id.*, ECF No. 10] and (b) Ascend RE Partners II LLC, as an alleged owner of a 60% membership interest in two Property Entities that, in turn, are the record owners of the Hudson Property and the Temple Property [*Id.*, ECF No. 23].

15.     JG obtained title insurance policies to protect JG's contractual right to a post-default lien in the Properties and Surplus Sale Proceeds to secure payment of the JG

Debt.  Attached hereto in Exhibits B-H are recently issued Update Certificates, on behalf of JG's title insurance company, as to the Record Owner and Lien Status for the seven Properties owned by the six Property Entities, to wit: Exhibit B (Hudson Property), Exhibit C (Temple Property), Exhibit D (Liberty Property), Exhibit E (Beachway Property), Exhibit F (Teaneck Property), Exhibit G (McKinley Property) and Exhibit H (South Park Property).  Those seven Properties, and the Surplus Sale Proceeds to be generated by a sale thereof, are the subject of this action.

16.      For ease of reference, set forth below is a list of the recorded (and unrecorded) liens, interests and claims for the seven Properties (and the Surplus Sale Proceeds) about which JG is aware, as of the date of commencement of this action - - including the tax debt that the Federal, State, and County governments claim (or may claim) is owed (or will become owed during the pendency of this case), and whether such tax debt is (or may become) secured by a government lien against the Properties (or the Surplus Sale Proceeds arising therefrom):

| **Property Address-Owner** | **Liens, Interests Or Claims To Property Or Surplus Sale Proceeds Thereof In Excess Of First Mortgage Lien** |
| --- | --- |
| 107-109 Hudson Street<br>Hackensack, NJ<br>Lenox Hudson LLC<br>(Plaintiff) | First Mortgage: $2,165,000 loan, recorded 4/5/18, assigned to and now held by U.S. Bank National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 (Defendant) (Exh B) |
| | Owner Declaration of Restriction, recorded 6/27/19, to recording-nominee attorney Judah Zelmanovitz and Neil Fink (Defendants) on behalf of Plaintiff JG (Exh A-B) |
| | JLS Equities LLC Claim that $1.1 million loan is |

collateralized by a 100% membership interest in
River Funding LLC that, in turn, has Claim to
ownership of 100% membership interest in
Lenox Hudson LLC

Ascend RE Partners II LLC Claim to ownership of
60% membership interest in Lenox Hudson LLC

| **Property Address-Owner** | Federal, State and County tax debt (Defendants) **Liens, Interests Or Claims To Property Or Surplus Sale Proceeds Thereof In Excess Of First Mortgage Lien** |
|---|---|
| 54-78 Temple Avenue Hackensack, NJ Lenox Temple LLC (Plaintiff) | First Mortgage: $6,675,000 loan, recorded 4/4/18, assigned to and now held by U.S. Bank National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 (Defendant) (Exh C) |

Owner Declaration of Restriction, recorded 6/18/19,
to recording-nominee attorney Judah Zelmanovitz
and Neil Fink (Defendants) on behalf of
Plaintiff JG (Exh A and C)

Owner Declaration of Restriction, recorded 7/5/19,
to recording-nominee attorney Herbert Tepfer
(Defendant) (Exh C)

Owner Declaration of Restriction, recorded 7/19/19,
to recording-nominee attorney Herbert Tepfer
(Defendant) (Exh C)

JLS Equities LLC Claim that $1.1 million loan is
collateralized by a 100% membership interest in
River Funding LLC that, in turn, has Claim to
ownership of 100% membership interest in
Lenox Temple LLC

Ascend RE Partners II LLC Claim to ownership of
60% membership interest in Lenox Temple LLC

Federal, State and County tax debt (Defendants)

_____

406-444 Liberty Avenue
Hackensack, NJ
Lenox Liberty LLC
(Plaintiff)

First Mortgage: $5,420,000 loan, recorded 4/18/18, assigned to and now held by U.S. Bank National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 (Defendant) (Exh D)

| **Property Address-Owner** | **Liens, Interests Or Claims To Property Or Surplus Sale Proceeds Thereof In Excess Of First Mortgage Lien** |
| --- | --- |

406-444 Liberty Avenue
Hackensack, NJ
Lenox Liberty LLC
(Plaintiff)

Owner Declaration of Restriction, recorded 6/18/19, to recording nominee-attorney Judah Zelmanovitz and Neil Fink (Defendants) for JG (Exh A and D)

JLS Equities LLC Claim that $1.1 million loan is collateralized by a 100% membership interest in River Funding LLC that, in turn, has Claim to ownership of 100% membership interest in Lenox Liberty LLC

Federal, State and County tax debt (Defendants)

_____

544-560 Broadway
Keansburg, NJ
Lenox Beachway LLC
(Plaintiff)

First Mortgage: $4,594,000 loan, recorded 12/12/17 assigned to and now held by Citibank, N.A., as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48 (Defendant) (Exh E)

Subordinate Mortgage: $350,000 loan, recorded 8/14/19, made and held by Park National Capital Funding LLC (Defendant) (Exh E)

Owner Declaration of Restriction, recorded 8/14/19, to recording-nominee attorney Herbert Tepfer (Defendant) (Exh E)

Owner Declaration of Restriction, recorded 9/3/19, to recording-nominee attorney Judah Zelmanovitz and Neil Fink (Defendants) on behalf of Plaintiff JG (Exh A and E)

|  | Federal, State and County tax debt (Defendants) |
|---|---|
| 1407 Palisade Avenue<br>Teaneck, NJ<br>Teaneck Plaza Ventures LLC<br>(Plaintiff) | First Mortgage: $3,900,000 loan, recorded 9/24/18, made and held by Affinity Federal Credit Union (Defendant) (Exh F) |
| **Property Address-Owner** | **Liens, Interests Or Claims To Property Or Surplus Sale Proceeds Thereof In Excess Of First Mortgage Lien** |
| 1407 Palisade Avenue<br>Teaneck, NJ<br>Teaneck Plaza Ventures LLC<br>(Plaintiff) | Subordinate Mortgage: $2,200,000 loan, dated 12/11/15 and recorded 8/15/19, made and held by Hutton Ventures LLC (Defendant) (Exh F) |
|  | Owner Declaration of Restriction, recorded 7/3/19, to recording-nominee attorney Law Offices of Chaim C. Zlotowitz, Esq. PLLC (Defendant) (Exh F) |
|  | Owner Declaration of Restriction, recorded 7/5/19, to recording-nominee attorney Herbert Tepfer (Defendant) (Exh F) |
|  | Owner Declaration of Restriction, recorded 8/7/19, to recording-nominee attorney Law Offices of David Fleischmann, P.C. (Defendant) (Exh F) |
|  | Owner Declaration of Restriction, recorded 8/30/19, to recording-nominee attorney Judah Zelmanovitz and Neil Fink (Defendants) on behalf of Plaintiff JG (Exh A and F) |
|  | Federal, State and County tax debt (Defendants) |
| 88 McKinley Avenue<br>Hackensack, NJ<br>Hackensack Norse LLC<br>(Plaintiff) | First Mortgage: $3,775,000 loan, recorded 9/24/18, assigned to and now held by U.S. Bank National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, |

Series 2018-SB57
(Defendant) (Exh G)

Subordinate Mortgage: $2,200,000 loan, dated
12/11/15 and recorded 8/15/19, made and held by
Hutton Ventures LLC
(Defendant) (Exh F and G)

| **Property Address-Owner** | **Liens, Interests Or Claims To Property Or Surplus Sale Proceeds Thereof In Excess Of First Mortgage Lien** |
|---|---|
| 88 McKinley Avenue<br>Hackensack, NJ<br>Hackensack Norse LLC<br>(Plaintiff) | Owner Declaration of Restriction, recorded 8/30/19, to recording-nominee attorney Judah Zelmanovitz and Neil Fink (Defendants) on behalf of Plaintiff JG (Exh A and G)<br><br>Federal, State and County tax debt (Defendants) |
| 170 South Park Street<br>Hackensack, NJ<br>Hackensack Norse LLC<br>(Plaintiff) | First Mortgage: $3,775,000 loan, recorded 9/24/18, assigned to and now held by U.S. Bank National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB57<br>(Defendant) (Exh H)<br><br>Subordinate Mortgage: $2,200,000 loan, dated 12/11/15 and recorded 8/15/19, made and held by Hutton Ventures LLC<br>(Defendant) (Exh F-H)<br><br>Owner Declaration of Restriction, recorded 8/30/19, to recording-nominee attorney Judah Zelmanovitz and Neil Fink (Defendants) on behalf of Plaintiff JG (Exh A and H)<br><br>Federal, State and County tax debt (Defendants) |

D. **Jurisdiction And Venue**

17.     The Property Entities, as Plaintiffs, are the owners of the Properties, and the Surplus Sale Proceeds to be generated by a sale thereof.

18.     Pursuant to the allegations set forth above, including but not limited to the allegations in paragraph 16 herein and Exhibits A-H hereto, it appears that the United States, as a Defendant, has or claims (or may claim) that tax debt is owed (or will become owed during the pendency of this case) involving all seven Properties (and whether such tax debt is, or may become, secured by a federal lien against the Properties, or the Surplus Sale Proceeds arising therefrom).

19.     Pursuant to the allegations set forth above, including but not limited to the allegations in paragraph 16 herein and Exhibits A-H hereto, it appears that an array of non-governmental persons and entities, as Defendants, have or claim a right to and/or lien on and/or interest in the seven Properties, or the Surplus Sale Proceeds arising therefrom.

20.     The Property Entities, as the owners of the Properties and the Surplus Sale Proceeds to be generated by a sale thereof, are (or will be) faced with rival or competing claims by the United States (as a Defendant), and by the non-governmental defendants, as Defendants, to whom has legal priority to receive the Surplus Sale Proceeds.

21.      Pursuant to 28 U.S.C. 2410(a)(5) and/or 28 U.S.C. 1331, this Court has subject matter jurisdiction over this action in the nature of the Property Entities' interpleader with respect to the Properties and the Surplus Sale Proceeds arising therefrom and, in connection therewith, an adjudication of the legal priority of the United States (as a governmental Defendant), and the non-governmental defendants, to receive the Surplus Sale Proceeds, in whole or in part.

22.     Pursuant to 28 U.S.C. 2410(a)(1) and/or 28 U.S.C. 1331, this Court also has subject matter jurisdiction because this action by the Property Entities regarding its ownership of the Properties and the Surplus Sale Proceeds arising therefrom - - and/or this action by JG as a post-default holder of an asserted lien or interest in the Properties and the Surplus Sale Proceeds - - seeks to quiet title to the Properties and the Surplus Sale Proceeds and, in connection therewith, an adjudication of the legal priority of the United States (as a governmental Defendant), and the non-governmental defendants, to receive the Surplus Sale Proceeds, in whole or in part.

23.     Even if the United States does not have or claim a lien on any property that is the subject of this action (or does not have or claim another type of legal interest or equitable interest in such property), the Court would also have subject matter jurisdiction over this action, pursuant to the "minimal diversity" provision for a statutory interpleader case under 28 U.S.C. 1335, because at least two of the parties, who have or claim a right to and/or lien on and/or interest in the property that is the subject of this action, are citizens of different states.

24.     JG, which asserts that it is a post-default holder of a lien or interest in all seven Properties and the Surplus Sale Proceeds, is a New York citizen, based upon JG's status as a New York corporation whose principal place of business is located in the City and State of New York.  Each one of the seven Properties (and the Surplus Sale Proceeds arising therefrom) are owned by the Property Entities, each of which is a New Jersey limited liability company.  And, based upon the Agreements annexed hereto as Exhibit A, Defendant Seth Levine, who is a member in each one of the seven limited liability company Property Entities, is a New Jersey citizen who lives in Teaneck, New Jersey.

25.    Upon information and belief, none of the current holders of the First Mortgage Liens against the Properties are New York citizens.  See Exhibits B-H annexed hereto.

26.    Upon information and belief, the County of Bergen in the State of New Jersey, as a governmental defendant, has or claims a tax debt (whether recorded or unrecorded and whether secured or unsecured) against six of the seven Properties - - and the County of Monmouth in the State of New Jersey, as a governmental defendant, has or claims a tax debt (whether recorded or unrecorded and whether secured or unsecured) against one of the seven Properties - - and neither the County of Bergen in the State of New Jersey, nor the County of Monmouth in the State of New Jersey, are New York citizens.

27.    Pursuant to the "minimal diversity" provision in 28 U.S.C. 1335, where (as here) at least two of the persons or entities claiming a right to and/or lien on and/or interest in the property that is the subject of an interpleader are citizens of different states, then the Court has subject matter jurisdiction to adjudicate the statutory interpleader case.  Thus, even if the United States of America were not a party to this interpleader, the Court would still have subject matter jurisdiction over this action under 28 U.S.C. 1335.

28.    To the extent there may be a cause of action in this Verified Complaint, if any, that the Court may find to be outside the scope of original federal jurisdiction under 28 U.S.C. 2410(a)(5) and/or 28 U.S.C. 2410(a)(1) and/or 28 U.S.C. 1335, then the Court has supplemental jurisdiction, pursuant to 28 U.S.C. 1367, over any such cause of action because any such cause of action, as set forth herein, is sufficiently "related" to the causes of action over which this Court has original federal jurisdiction, such that they form part of "the same case or controversy" under Article III of the U.S. Constitution.

29.    Venue over this action is proper in the District of New Jersey because, *inter alia*,

the Properties that are the subject of this action are located in the State of New Jersey.

**FIRST CAUSE OF ACTION**
**(Specific Performance Of JG's Contractual Sale Trigger Right,**
**Under The Agreements, To Direct The Property Entities, Or A**
**Court Appointed Receiver For The Property Entities, To Proceed**
**With An Immediate Sale Of The Properties For Market Value - -**

**With The Surplus Sale Proceeds That Remain, After The Payment**
**Of The First Mortgage Liens On The Properties, To Be Paid**
**Into The Court Registry (Or Held In Escrow By A Court**
**Appointed Receiver For The Property Entities) - - Thereafter**
**To Be Distributed To Lienors, Interest-Holders, Or Other**
**Claimants Thereto In Accordance With An Adjudication**
**Of Their Legal Priority Herein)**

30.     All allegations set forth above are hereby repeated as if they were set forth here

in their entirety.

31.     In July 2019, pursuant to written transaction Agreements, JG paid a purchase

price of $1.5 million to acquire, *inter alia*, a series of membership and ownership

interests in the Property Entities from Levine - - and the Property Entities are the record

owners of the Properties.[2]  The Agreements are annexed hereto as Exhibit A.

32.     By not later than early August 2019, contractual defaults took place under the

Agreements involving a failure to comply with obligations to repurchase JG's

membership and ownership interests in the Property Entities for a contractually-required

"Buyout Price."  See Exhibit A.

33.     The Agreements provide that, **after-default**, (a) JG has sole and exclusive

management authority over the Property Entities and the Properties and, in particular, a

_____

[2] The Agreements provide that, at the time of contracting, Levine held 100% of the
membership and ownership interests in all six (6) Property Entities that, in turn, are the
record owners of the seven (7) Properties - - except for minor percentages in two
Properties that were held in the name of Levine's wife or children.

sole and exclusive Sale Trigger Right authorizing JG to cause an immediate sale of the Properties, without the need for consent from Levine or anyone else, for the purpose of generating sale proceeds to satisfy the First Mortgage Liens on the Properties, with the Surplus Sale Proceeds to pay the JG Debt and (b) JG has a post-default lien in the Properties and Surplus Sale Proceeds to secure payment of the JG Debt.

34.     JG has complied with its obligations under the Agreements.

35.     JG lacks an adequate remedy at law that is as full and complete as JG's contractually authorized equitable remedy, under the Agreements, for an immediate sale of the Properties, in accordance with JG's Sale Trigger Right for the Properties.

36.     The Court should issue an injunction (a) granting specific performance of JG's contractual Sale Trigger Right, under the Agreements, to direct the Property Entities, or a Court appointed Receiver for the Property Entities, to proceed with an immediate sale of the Properties for market value; (b) a direction that the Surplus Sale Proceeds that remain, after the payment of the First Mortgage Liens on the Properties, shall be paid into the Court registry (or held in escrow by a Court appointed Receiver for the Property Entities); and (c) a direction that such Surplus Sale Proceeds shall thereafter be distributed to lienors, interest-holders, or other claimants thereto in accordance with an adjudication of their legal priority herein.

**SECOND CAUSE OF ACTION**
**(28 USC 2410(a)(5) Claim In The Nature Of Interpleader**
**For The Properties, And The Surplus Sale Proceeds Arising**
**Therefrom, Involving The United States As A Lienor Or**
**Claimant Thereto - -**

**Interpleader Injunction To Direct The Property Entities,**
**Or A Court Appointed Receiver For The Property Entities,**
**To Proceed With An Immediate Sale Of The Properties For**
**Market Value - -**

**With The Surplus Sale Proceeds That Remain, After The Payment**
**Of The First Mortgage Liens On The Properties, To Be Paid**
**Into The Court Registry (Or Held In Escrow By A Court**
**Appointed Receiver For The Property Entities) - - Thereafter**
**To Be Distributed To Lienors, Interest-Holders, Or Other**
**Claimants Thereto In Accordance With An Adjudication**
**Of Their Legal Priority Herein)**

37.     All allegations set forth above are hereby repeated as if they were set forth here

in their entirety.

38.     28 U.S.C. 2410(a)(5) authorizes the Court to exercise jurisdiction whenever an

action in the nature of interpleader involves the United States as a lienor or claimant to

the property that is the subject of the action.

39.     The Property Entities, as Plaintiffs, are the owners of the Properties and the

Surplus Sale Proceeds to be generated by a sale thereof.

40.     Pursuant to the allegations set forth above, including but not limited to the

allegations in paragraph 16 herein and Exhibits A-H hereto, it appears that the United

States of America, as a Defendant, has or claims (or may claim) that tax debt is owed (or

will become owed during the pendency of this case) involving all seven Properties (and

whether such tax debt is, or may become, secured by a federal lien against the Properties

or the Surplus Sale Proceeds arising therefrom).

41.     Pursuant to the allegations set forth above, including but not limited to the allegations in paragraph 16 herein and Exhibits A-H hereto, it appears that an array of non-governmental persons and entities have or claim a right to and/or lien on and/or interest in the seven Properties or the Surplus Sale Proceeds arising therefrom.

42.     The Property Entities, as the owners of the Properties and the Surplus Sale Proceeds to be generated by a sale thereof, are (or will be) faced with rival or competing claims by the United States of America (as a Defendant), and by the non-governmental defendants, as to whom has legal priority, in whole or in part, to receive the Surplus Sale Proceeds.

43.     Pursuant to 28 U.S.C. 2410(a)(5), the Court should issue an interpleader injunction (a) to direct the Property Entities, or a Court appointed Receiver for the Property Entities, to proceed with an immediate sale of the Properties for market value; (b) to direct that the Surplus Sale Proceeds that remain, after the payment of the First Mortgage Liens on the Properties, shall be paid into the Court registry (or held in escrow by a Court appointed Receiver for the Property Entities); and (c) to direct that such Surplus Sale Proceeds shall thereafter be distributed to lienors, interest-holders, or other claimants thereto in accordance with an adjudication of their legal priority herein.

**THIRD CAUSE OF ACTION**
**(28 USC 2410(a)(1) Quiet Title Claim For The Properties,**
**And The Surplus Sale Proceeds Arising Therefrom, Involving**
**The United States As A Lienor Or Claimant Thereto - -**

**Quiet Title Injunction To Direct The Property Entities,**
**Or A Court Appointed Receiver For The Property Entities,**
**To Proceed With An Immediate Sale Of The Properties For**
**Market Value - -**

**With The Surplus Sale Proceeds That Remain, After The**
**Payment Of The First Mortgage Liens On The Properties,**
**To Be Paid Into The Court Registry (Or Held In Escrow By**
**A Court Appointed Receiver For The Property Entities) - -**
**Thereafter To Be Distributed To Lienors, Interest-Holders,**
**Or Other Claimants Thereto In Accordance With An**
**Adjudication Of Their Legal Priority Herein)**

44.     All allegations set forth above are hereby repeated as if they were set forth here

in their entirety.

45.     The same reasons that authorize the Property Entities to proceed with a claim in

the nature of interpleader under 28 U.S.C. 2410(a)(5), and for injunctive relief in

connection therewith, also authorize the Property Entities to proceed with a quiet title

claim under 28 U.S.C. 2410(a)(1), and for injunctive relief in connection therewith.

46.     JG asserts it is the holder of a post-default lien in the Properties and the Surplus

Sale Proceeds arising therefrom - - and the United States of America has or claims (or

may claim) a right to, lien on, or interest in the same.  The existence of rival or competing

claims to the Properties and the Surplus Sale Proceeds arising therefrom, by and between

JG and the United States of America, provides JG with independent authorization to

proceed with a quiet title claim under 28 U.S.C. 2410(a)(1), and for injunctive relief in

connection therewith.

47.     Pursuant to 28 U.S.C. 2410(a)(1), the Court should issue a quiet title injunction

(a) to direct the Property Entities, or a Court appointed Receiver for the Property Entities,

to proceed with an immediate sale of the Properties for market value; (b) to direct that the

Surplus Sale Proceeds that remain, after the payment of the First Mortgage Liens on the

Properties, shall be paid into the Court registry (or held in escrow by a Court appointed

Receiver for the Property Entities); and (c) to direct that such Surplus Sale Proceeds shall

thereafter be distributed to lienors, interest-holders, or other claimants thereto in

accordance with an adjudication of their legal priority herein.

### FOURTH CAUSE OF ACTION
**(28 USC 1335 Interpleader Injunction To Direct The Property
Entities, Or A Court Appointed Receiver For The Property
Entities, To Proceed With An Immediate Sale Of The Properties
For Market Value - -**

**With The Surplus Sale Proceeds That Remain, After The Payment
Of The First Mortgage Liens On The Properties, To Be Paid
Into The Court Registry (Or Held In Escrow By A Court
Appointed Receiver For The Property Entities) - - Thereafter
To Be Distributed To Lienors, Interest-Holders, Or Other
Claimants Thereto In Accordance With An Adjudication
Of Their Legal Priority Herein)**

48.     All allegations set forth above are hereby repeated as if they were set forth here

in their entirety.

49.     Pursuant to 28 U.S.C. 1335, the Court should issue an interpleader injunction

(a) to direct the Property Entities, or a Court appointed Receiver for the Property Entities,

to proceed with an immediate sale of the Properties for market value; (b) to direct that the

Surplus Sale Proceeds that remain, after the payment of the First Mortgage Liens on the

Properties, shall be paid into the Court registry (or held in escrow by a Court appointed

Receiver for the Property Entities); and (c) to direct that such Surplus Sale Proceeds shall

thereafter be distributed to lienors, interest-holders, or other claimants thereto in accordance with an adjudication of their legal priority herein.

**FIFTH CAUSE OF ACTION**
**(Appointment Of Receiver For The Property Entities To Manage**
**And Operate The Properties During The Pendency Of This Action**
**And To Sell The Properties For Market Value - -**

**With The Surplus Sale Proceeds That Remain, After The Payment**
**Of The First Mortgage Liens On The Properties, To Be Paid**
**Into The Court Registry (Or Held In Escrow By The Receiver) - -**
**Thereafter To Be Distributed To Lienors, Interest-Holders, Or**
**Other Claimants Thereto In Accordance With An Adjudication**
**Of Their Legal Priority Herein)**

50.     All allegations set forth above are hereby repeated as if they were set forth here in their entirety.

51.     In order to protect and preserve the value of the Properties and the Surplus Sale Proceeds for the benefit of all parties in this action (and whether pursuant to federal interpleader law and/or the Federal Rules of Civil Procedure and/or the Revised Uniform Limited Liability Company Act for a New Jersey limited liability company), the Court should appoint a Receiver for the Property Entities to manage and operate the Properties during the pendency of this action and to sell the Properties for market value - - with the Surplus Sale Proceeds that remain, after the payment of the First Mortgage Liens on the Properties, to be paid into the Court registry (or held in escrow by the Receiver), thereafter to be distributed to lienors, interest-holders, or other claimants thereto in accordance with an adjudication of their legal priority herein.

## SIXTH CAUSE OF ACTION
**(Declaratory Judgment That The Agreements Provide JG With A Post-Default Lien On The Properties And Surplus Sale Proceeds To Secure Payment Of The JG Debt, The Amount Of Which Shall Be Declared By The Court <u>And</u> Related Injunction That The Surplus Sale Proceeds That Remain, After The Payment Of The First Mortgage Liens On The Properties, Shall Be Distributed To JG - - Before Any Other Lienor Or Claimant Thereto - - To Satisfy The JG Debt Under The Agreements)**

52.     All allegations set forth above are hereby repeated as if they were set forth here in their entirety.

53.     The Court should issue a declaratory judgment that the Agreements provide JG with a post-default lien on the Properties and Surplus Sale Proceeds to secure payment of the JG Debt, the amount of which shall be declared by the Court.

54.     The Court should issue a related injunction that the Surplus Sale Proceeds that remain, after the payment of the First Mortgage Liens on the Properties, shall be distributed to JG - - before any other lienor or claimant thereto - - to satisfy the JG Debt under the Agreements.

55.     The Court should also issue a declaratory judgment adjudicating the precise amount of the JG Debt under the Agreements that the Property Entities and Levine owe, jointly and severally, to JG along with a declaration that such amount shall be paid to JG from the Surplus Sale Proceeds as requested herein.

## SEVENTH CAUSE OF ACTION
**(Plaintiffs' Recovery Of Attorney's Fees And Expenses)**

56.     All allegations set forth above are hereby repeated as if they were set forth here in their entirety.

57.     Pursuant to the Court's exercise of statutory interpleader jurisdiction under 28

U.S.C. 1335 and/or the common fund doctrine, Plaintiffs are entitled to recover the

attorney's fees and expenses they incur, in connection with this action, out of the Surplus

Sale Proceeds that remain, after the payment of the First Mortgage Liens on the

Properties, before any other lienor or claimant thereto.

58.     The Court should issue a declaratory judgment adjudicating the precise amount of

such attorney's fees and expenses, with a declaration that such amount shall be paid to JG

from the Surplus Sale Proceeds as requested herein.

**WHEREFORE**, Plaintiffs respectfully request that the Court grants and issues

the relief requested on the causes of action herein, together with an award to Plaintiffs of

their attorney's fees and expenses and the costs and disbursements herein.

Dated: October 2, 2019

GENE ROSEN'S LAW FIRM
A PROFESSIONAL CORPORATION
Attorneys for Plaintiffs


By: */s/ Gene W. Rosen*
        Gene W. Rosen, Esq.
        Michael B. Wolk, Esq., Proposed
        Pro Hac Vice Attorney for Plaintiffs

## VERIFICATION

JEREMY GOLDZAL hereby verifies and declares, pursuant to 28 U.S.C. 1746, under penalty of perjury as follows:

I am a President and principal of Plaintiff JG Funding Corp. ("JG"). By not later than early August 2019, a default occurred under the "Agreements" (as defined in the Verified Complaint), see Exhibit A annexed hereto, pursuant to which JG has sole and exclusive management authority over Plaintiffs Lenox Hudson LLC, Lenox Temple LLC, Lenox Liberty LLC, Lenox Beachway LLC, Teaneck Plaza Ventures LLC and Hackensack Norse LLC ("Property Entities") and the "Properties" (as defined in the Verified Complaint) and, in particular, a sole and exclusive "Sale Trigger Right" authorizing JG to cause an immediate sale of the Properties, without the need for consent from Defendant Seth Levine or anyone else, for the purpose of generating sale proceeds to satisfy the "First Mortgage Liens" on the Properties (as defined in the Verified Complaint), with the amount of the sale proceeds in excess of the First Mortgage Liens ("Surplus Sale Proceeds") to pay for the amount owed to JG under the Agreements (the "JG Debt"). I verify the truth of the allegations in the Verified Complaint based upon my personal knowledge and/or the contents of the attached documents or referenced therein. Executed on October 2, 2019 in the City and State of New York.

Jeremy Goldzal

25